UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**CHARLES R. HUTCHISON**            }
                                    }
    **Plaintiff,**                 }
                                    }
**v.**                              }    **Case No.:  2:14-CV-02114-MHH**
                                    }
**CAROLYN W. COLVIN,**              }
**Commissioner of the**             }
**Social Security Administration,** }
                                    }
    **Defendant.**                 }

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff Charles Hutchison seeks judicial review of a final adverse decision of the Commissioner of Social Security.[1] The Commissioner denied his claims for a period of disability and disability insurance benefits and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

---

[1] The complaint in this case is styled *Charles R. Hutchinson v. Carolyn Colvin*. (Doc. 1). However, in his declaration in support of a request to proceed *in forma pauperis*, the plaintiff referred to himself as Mr. Hutchison, not Mr. Hutchinson. (*See* Doc. 2-1). The documents and medical records contained in the administrative record also refer to the plaintiff as Mr. Hutchison. Therefore, the Court will refer to the plaintiff as Mr. Hutchison throughout this opinion.

## I.      PROCEDURAL HISTORY

Mr. Hutchison applied for a period of disability and disability insurance benefits on December 6, 2010.  (Doc. 8-6, p. 4).  Mr. Hutchison alleges that his disability began August 23, 2010.   (Doc. 8-6, p. 4).  The Commissioner initially denied Mr. Hutchison's claim on January 28, 2011.  (Doc. 8-5, p. 2).   Mr. Hutchison requested a hearing before an Administrative Law Judge (ALJ).  (Doc. 8-5, p. 9).  The ALJ issued an unfavorable decision on December 18, 2012.  (Doc. 8-3, p. 16).  On August 29, 2014, the Appeals Council declined Mr. Hutchison's request for review (Doc.  8-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

2004).  In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence" or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).  If the ALJ's decision is supported by substantial evidence, the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Hutchison has not engaged in substantial gainful activity since August 23, 2010, the alleged onset date. (Doc. 8-3, p. 22). The ALJ determined that Mr. Hutchison suffers from the following severe impairments: diabetes mellitus, morbid obesity, bilateral arthritis of the knees, and degenerative joint disease. (Doc. 8-3, p. 22). Mr. Hutchison also had surgery on his right rotator cuff, and was receiving treatment for obstructive sleep apnea and hypertension. The ALJ determined that these impairments are not severe. (Doc. 8-3, pp. 22-23). Based on a review of the medical evidence, the ALJ concluded that Mr. Hutchison does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-3, p. 23).

Next, the ALJ determined that Mr. Hutchison has the residual functional capacity:

> to perform light work as defined in 20 CFR 404.1567(b) except that he can never climb ladders, ropes[,] or scaffolds, and can only occasionally climb ramps or stairs. In addition, [Mr. Hutchison] can only occasionally stoop, kneel, crouch, crawl, or balance. [Mr. Hutchison] also requires the ability to change from a standing position to a sitting position (and vice versa) at least every hour. Finally, [Mr. Hutchison] should avoid concentrated exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights.

(Doc. 8-3, pp. 23-24).  Based on this RFC and testimony from a vocational expert, the ALJ concluded that Mr. Hutchison is able to perform his past relevant work as a security guard, real estate salesman, and telephone salesman.  Alternatively, relying on testimony from a vocational expert, the ALJ found that other jobs exist in the national economy that Mr. Hutchison can perform, including cashier, parking lot attendant, and arcade attendant.  (Doc. 8-3, pp. 26-27).  Accordingly, the ALJ determined that Mr. Hutchison is not disabled as defined in the Social Security Act. (Doc. 8-3, p. 28).

**IV.   ANALYSIS**

Mr. Hutchison argues that he is entitled to relief from the ALJ's decision because the ALJ (1) failed to properly consider the opinions of treating physician Dr. Robert Sorrell and consultative physician Dr. Jack Zaremba; and (2) erred in giving "great weight" to the opinion of Dr. Heilpern a non-examining, reviewing physician. The Court disagrees.

In making his RFC determination, the ALJ thoroughly reviewed Mr. Hutchison's treatment records. (Doc. 8-3, pp. 23-24).  The ALJ then examined the opinion evidence in the administrative record.  (Doc. 8-3, p. 23).  The ALJ gave great weight to the opinion of Dr. Robert Heilpern, a non-examining reviewing consultant.  (*Id.*).  The ALJ adopted Dr. Heilpern's findings because they were "consistent with [Mr. Hutchison's] treatment record . . . Specifically, conservative

5

treatment generally appeared to control [Mr. Hutchison's] symptoms.  Further, Dr. Heilpern provided detailed support for his conclusions, which appeared reasonable in light of the evidence in the record."  (Doc. 8-3, pp. 24-25).

The ALJ gave little weight to Dr. Sorrell's and Dr. Zaremba's opinions "because they were inconsistent with [Mr. Hutchison's] treatment records . . . Specifically, [Mr. Hutchison] received only conservative treatment that generally appeared to control his symptoms.  In addition, Dr. Sorrell and Dr. Zaremba appeared to rely primarily on [Mr. Hutchison's] subjective reports of symptoms and limitations."  (Doc. 8-3, p. 24).  Before turning to the question of whether the ALJ properly considered the opinions of Dr. Sorrell, Dr. Zaremba, and Dr. Heilpern, the Court briefly reviews the opinion evidence in this case.

According to the medical records, since 2010, Dr. Sorrell has treated Mr. Hutchison twice.  (Doc. 8-8, p. 121; Doc. 8-9, p. 12).  Mr. Hutchison visited Dr. Sorrell on December 1, 2010 for hip and left knee pain.  (Doc. 8-8, p. 121).  Mr. Hutchison had "tenderness anteriorly in both hips" and in "both SI joints," but Mr. Hutchison had "near full range of motion of both of his hips."  (Doc. 8-8, p. 121). Mr. Hutchison's left knee also had some tenderness; however, x-rays showed no arthritis.  Dr. Sorrell determined that Mr. Hutchison's weight caused his joint pain. (Doc. 8-8, p. 121).  Dr. Sorrell encouraged Mr. Hutchison to lose weight and to consider gastric bypass surgery.  (Doc. 8-8-, p. 121).

Mr. Hutchison visited Dr. Sorrell again on March 7, 2011.  Mr. Hutchison complained about knee pain after a fall.  (Doc. 8-9, p. 12).  Upon examination, Dr. Sorrell found "diffuse tenderness in both [] knees" and "no effusion in either knee." (Doc. 8-9, p. 12).  Dr. Sorrell commented that Mr. Hutchison is "known to have arthritis in both knees," but x-rays "of both knees show[ed] no acute abnormalities." (Doc. 8-9, p. 12).[2]  Dr. Sorrell also noted that Mr. Hutchison had some tenderness and swelling above his right ankle.  (Doc. 8-9, p. 12).  Dr. Sorrell diagnosed Mr. Hutchison with "a contusion on his lower leg and sprain to his ankle." (Doc. 8-9, p. 12).  Dr. Sorrell ordered Mr. Hutchison to ice his injuries, and Dr. Sorrell prescribed pain medication.  Dr. Sorrell ordered Mr. Hutchison to return within two weeks if the pain persisted.  (Doc. 8-9, p. 12).  There is no evidence that Mr. Hutchison returned for a follow-up visit with Dr. Sorrell.

On April 15, 2011, Dr. Sorrell completed a physical capacities evaluation for Mr. Hutchison. Dr. Sorrell opined that Mr. Hutchison can lift five pounds occasionally and sit for four hours and stand for two hours in an 8-hour workday. (Doc. 8-10, p. 80).  Dr. Sorrell also opined that Mr. Hutchison can never climb stairs or ladders, bend, or stoop.  (Doc. 8-10, p. 80).

---

[2] Mr. Hutchison reported to the Brookwood Medical Center on March 6, 2011 immediately after his fall. (Doc. 8-10, p. 44).  X-rays of Mr. Hutchison's lumbar spine from that visit show "no fracture or disk narrowing." (Doc. 8-10, p. 44).

7

Dr. Sorrell also completed clinical assessment of pain and clinical assessment of fatigue/weakness forms. (Doc. 8-10, pp. 82-85). He noted that Mr. Hutchison's pain and fatigue or weakness is present to such an extent that it would distract Mr. Hutchison from daily activities and work. (Doc. 8-10, pp. 82, 84). Dr. Sorrell concluded that physical activity would increase Mr. Hutchison's pain and his level of fatigue or weakness to such a degree as to cause distraction from or total abandonment of tasks. (Doc. 8-10, pp. 82, 84).

Dr. Zaremba performed an independent consultative medical examination on Mr. Hutchison on October 24, 2012. (Doc. 8-11, p. 31). During the exam, Mr. Hutchison complained of severe neck pain and numbness in his left arm. Mr. Hutchison reported that he had a herniated or bulging disc in his neck. Mr. Hutchison also reported "difficulty with his legs, particularly pain in his feet. There is constant paresthesias and numbness." (Doc. 8-11, p. 31). Mr. Hutchison told Dr. Zaremba that he has "difficulty manipulating objects because of numbness in his fingers" and "carrying moderately heavy objects." (Doc. 8-11, p. 31). However, Dr. Zaremba noted that Mr. Hutchison "can attend to his activities of daily living." (Doc. 8-11, p. 31).

Upon examination, Mr. Hutchison was in "no acute distress." (Doc. 8-11, p. 32). His neck was "supple," but it did "pop and [Mr. Hutchison] state[d] this causes pain." (Doc. 8-11, p. 32). Mr. Hutchison was unable to heel and toe walk

or squat, and an exam of his extremities revealed cyanosis and chronic brawny pedal enema, along with varicosities through the knee. Nevertheless, Dr. Zaremba noted that Mr. Hutchison had a full range of motion in his extremities. (Doc. 8-11, p. 33). Mr. Hutchison's range of motion in his back was "limited by body habitus and pain." (Doc. 8-11, p. 33). Mr. Hutchison's "gait [was] slow and antalgic favoring the right leg." (Doc. 8-11, p. 33).

Dr. Zaremba's examination notes contain the following diagnoses:

1. Left shoulder rotator cuff with decreased range of motion of the left shoulder, particularly abduction over the head.
2. Status post right rotator cuff repair with good function.
3. DJD, status post arthroscopic surgery to the right knee with pain and gait instability. The patient has been told he needs a knee replacement.
4. Morbid obesity.
5. Obstructive sleep apnea. The patient uses a CPAP.
6. Diabetes mellitus type II with background retinal hemorrhages as well as peripheral neuropathy, feet worse than hands, affecting much of his finer movements, also pain and ambulatory dysfunction.
7. Gouty arthritis with periodic flares every month, affecting particularly his left great toe and foot; and also his knees. The patient states he can stand about 15-20 minutes. He can perhaps walk 1-2 blocks. He can do a flight of stairs slowly with the handrail. He does not do a lot of heavy lifting. He carries smaller bags of groceries, only a few pounds.
8. Hypertension.
9. Hyperlipidemia on medication.

(Doc. 8-11, p. 33).

Also on October 24, 2012, Dr. Zaremba completed a physical capacities evaluation. He opined that Mr. Hutchison can lift 10 pounds occasionally and that

9

Mr. Hutchison could sit for two hours and stand for one hour in an 8-hour work day. (Doc. 8-11, p. 35). Dr. Zaremba also opined that Mr. Hutchison can occasionally push and pull, grasp, twist, handle, and reach overhead with his right arm. (Doc. 8-11, p. 35). Dr. Zaremba concluded that Mr. Hutchison should never stoop, bend, or reach overhead with his left arm. (Doc. 8-11, p. 35).

Dr. Zaremba also completed clinical assessment of pain and clinical assessment of fatigue/weakness forms. (Doc. 8-11, pp. 36-39). He noted that Mr. Hutchison's pain and fatigue or weakness is present to such an extent that it would distract Mr. Hutchison from daily activities and work. (Doc. 8-11, pp. 36, 38). Dr. Zaremba concluded that physical activity would increase Mr. Hutchison's pain and his level of fatigue or weakness to such a degree as to cause distraction from or total abandonment of tasks. (Doc. 8-11, pp. 36, 38).

On January 28, 2011, state agency non-examining medical consultant Dr. Heilpern reviewed Mr. Hutchison's medical records and in a report opined that Mr. Hutchison can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of 6 hours in an 8-hour work day, and sit for a total of 6 hours in an 8-hour work day. (Doc. 8-8, p. 127). According to Dr. Heilpern, Mr. Hutchison has an unlimited ability to push and/or pull, and Mr. Hutchison can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; however, Mr. Hutchison can never climb ladders, ropes, or scaffolds.

(Doc. 8-8, p. 127-128). Dr. Heilpern also opined that Mr. Hutchison should avoid hazardous machinery and heights. (Doc. 8-8, p. 130).

Having examined the relevant opinion evidence and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's decision to give little weight to Dr. Sorrell's and Dr. Zaremba's opinions regarding Mr. Hutchison's capacity to work. "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). The ALJ did so here.

An ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error." *Gaskin*, 533 Fed. Appx. at 931. The opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)); *see also Russell v. Astrue*, 331 Fed. Appx. 678, 681 (11th Cir. 2009) (citing *McSwain* and

11

holding that the ALJ did not err in affording little weight to an examiner's opinion where the ALJ found the claimant's other records did not support the opinion).

Assuming that Dr. Sorrell is a treating physician, the ALJ articulated good cause for giving Dr. Sorrell's opinion little weight.[3] The ALJ explained that Dr. Sorrell's conclusions are inconsistent with Mr. Hutchison's treatment records, particularly Mr. Hutchison's conservative treatment that controlled his symptoms. (Doc. 8-3, p. 24). The ALJ also was unwilling to give substantial weight to Dr. Sorrell's opinion because Dr. Sorrell "appeared to rely primarily on [Mr. Hutchison's] subjective reports of symptoms and limitations." (Doc. 8-3, p. 24). Substantial evidence in the record supports these conclusions. Thus, the ALJ had

---

[3] A treating source is an acceptable medical source "who has, or has had, an ongoing treatment relationship with [the claimant]." *See* 20 C.F.R. §§ 404.1502, 416.902 ("Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with acceptable medical practice for the type of treatment/and or evaluation required for your medical condition(s)."). The record contains treatment notes from only two visits with Dr. Sorrell. (Doc. 8-8, p. 121; Doc. 8-9, p. 12). If Dr. Sorrell treated Mr. Hutchison only twice, the Court probably would not be inclined to find that Dr. Sorrell qualifies as a treating source. *See Yarbrough v. Astrue*, 2013 WL 4434013, at *6 (N.D. Ala. Aug. 15, 2013) (physician was not a treating source in part because the doctor treated the claimant on only four occasions); *compare Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. Appx 589, 591 n. 3 (11th Cir. 2006) (holding that a doctor was a claimant's treating physician because he had "an ongoing relationship" with the claimant as he treated the claimant on numerous occasions throughout the relevant time period, made notes regarding her condition, and referred her to (and received updates from) various other medical professionals). However, during his administrative hearing, Mr. Hutchison testified that he had seen Dr. Sorrell "off and on since 2000." (Doc. 8-3, p. 54). Dr. Sorrell's December 2010 treatment note also indicates that Dr. Sorrell previously saw Mr. Hutchison "for his right knee and his left foot and his neck." (Doc. 8-8, p. 121). Because Mr. Hutchison's testimony and Dr. Sorrell's treatment notes suggest that Mr. Hutchison has had an ongoing treatment relationship with Dr. Sorrell, for purposes of this review, the Court assumes that Dr. Sorrell qualifies as a treating physician even though the record contains notes from only two visits.

good cause for giving little weight to the opinion of Mr. Hutchison's treating physician, Dr. Sorrell. *See e.g.*, *See Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those opinions regarding the claimant's disability where inconsistent with the physicians' treatment notes and unsupported by the medical evidence); *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (ALJ's decision that treating physician's opinion should be given little weight was supported by substantial evidence where the ALJ identified several specific contradictions between the physician's opinion and other evidence of record including claimant's own statements and medical records from examining or consultative physicians).

The ALJ also stated with specificity his reason for giving little weight to Dr. Zaremba's opinion. Like Dr. Sorrell, the ALJ determined that Dr. Zaremba's conclusions are inconsistent with Mr. Hutchison's treatment records. As a one-time examining physician, the ALJ was not required to afford special deference to Dr. Zaremba's opinion. *See McSwain*, 814 F.2d at 619. Even if entitled to some deference, substantial evidence in the record supports the ALJ's decision to give Dr. Zaremba's opinion little weight.

Having evaluated the opinions of Dr. Sorrell and Dr. Zaremba and assigned little weight to them, the ALJ based his RFC findings on Dr. Heilpern's

13

assessment. Mr. Hutchison argues that it was improper for the ALJ to rely on Dr. Heilpern's opinion because: (1) Dr. Heilpern never examined him; and (2) Dr. Heilpern provided an opinion at a time when a substantial portion of the medical evidence was not of record. (Doc. 12, p. 14-15). These arguments are not persuasive.

First, the Court disagrees with Mr. Hutchison's contention that the ALJ should not have afforded great deference to Dr. Heilpern's conclusions because Dr. Heilpern provided an opinion without the benefit of medical records ranging from January 28, 2011 to the date of review. Dr. Heilpern examined the entire record, including all of Mr. Hutchison's examination and treatment notes through January 28, 2011. If neither the ALJ nor Dr. Heilpern had access to the entire medical record, then the Court might be inclined to find that substantial evidence did not support the ALJ's decision to rely upon Dr. Heilpern's RFC assessment. *See Lewis v. Astrue*, 2012 WL 5868615, at *9 (S.D. Ala. Nov. 20, 2012). But the ALJ had access to a complete set of records when he evaluated Dr. Heilpern's assessment, and the ALJ referred to specific medical evidence of record in making his RFC analysis. Therefore, the Court finds this argument unpersuasive.

Second, the Court concludes that the ALJ could rely upon Dr. Heilpern's opinion even though Dr. Heilpern did not examine Mr. Hutchison. The Eleventh Circuit has recognized that the "opinions of nonexamining, reviewing physicians,

when contrary to the opinion of a treating physician, are entitled to little weight and do not, 'taken alone, constitute substantial evidence.'" *Gray v. Comm'r of Soc. Sec.*, 2013 WL 6840288 *3 (11th Cir. Dec. 30, 2013) (per curiam) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). Nevertheless, if an ALJ properly discounts a treating physician's opinion, then an ALJ may rely on contrary opinions of non-examining physicians. *See Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971 (11th Cir. Mar. 9, 2007) (per curiam) (holding that the ALJ properly assigned substantial weight to non-examining sources when he rejected a treating psychologist's opinion and stated proper reasons for doing so); *see generally Ogranaja v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 848, 850-51 (11th Cir. 2006) (per curiam) (noting that an ALJ may consider reports and assessments of state agency physicians as expert opinions and finding that the ALJ's decision was supported by substantial evidence because the ALJ "arrived at his decision after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians").

As stated, the ALJ had access to a complete set of medical records to assist his evaluation of Dr. Heilpern's RFC assessment. Based on his review of those records, the ALJ noted that in October 2010, although Mr. Hutchison was overweight and his diabetes was uncontrolled, Mr. Hutchison moved all extremities normally and his cardiologist encouraged him to exercise and lose

weight. (Doc. 8-3, p. 23; Doc. 8-8, p. 119). The ALJ also commented that in January 2011, diagnostic imaging of Mr. Hutchison's lower extremities showed no abnormalities. (Doc. 8-3, p. 23; Doc. 8-9, p. 9).

The ALJ remarked that after Mr. Hutchison injured his knees and back after a fall in March 2011, doctors treated his injuries with medication and physical therapy. After approximately two months of physical therapy, Mr. Hutchison reported that he had made a "dramatic improvement" and that his knee and back did not "bother him anymore than they usually do 'for his size.'" (Doc. 8-10, p. 77). When he completed therapy in May 2011, Mr. Hutchison had not noticed any spasms, and his worst pain level was 2/10. (Doc. 8-10, p. 77).

Also in May 2011, doctors diagnosed Mr. Hutchison with diabetic neuropathy, but on examination, Mr. Hutchison' gait, station, and posture were normal. (Doc. 8-3, p. 23; Doc. 8-9, pp. 31-32). By February 2012, Mr. Hutchison had lost 40 pounds. On examination, his gait, station, and posture were normal. Mr. Hutchison reported that his symptoms were manageable. (Doc. 8-3, p. 23; Doc. 8-9, pp. 28-29). The ALJ also noted that in October 2012, Mr. Hutchison's diabetes symptoms were mild, and Mr. Hutchison denied joint and muscle pain. (Doc. 8-3, p. 23; Doc. 8-12, p. 3).

The ALJ's decision also reflects his consideration of Mr. Hutchison's daily activities in comparison to Mr. Hutchison's subjective complaints. The ALJ wrote:

> The undersigned first noted that the claimant's generally conservative treatment record, as discussed above, did not support his allegations of significant and profound limitation. Specifically, conservative treatment appeared to control his symptoms. In addition, the credible medical opinion evidence indicated that the claimant was capable of light work with some postural and environmental limitations. Further, the claimant's own statements and behavior discount his allegations of limitation. As discussed above, the claimant appeared to put forth little effort to lose weight despite his doctors' repeated suggestions. The claimant testified that his last employer laid him off from his job as a security officer on or about his alleged disability onset date. He further stated that he was very upset with the layoff and felt it was not justified, which suggested that that claimant was capable of performing that job. He also testified that he shopped for groceries, cooked simple meals, washed dishes, cared for his young children aged seven and three years old, watched television, and periodically visited with friends or relatives. Moreover, he stated that he worked on his computer doing word processing and internet research in addition to watching movies on Netflix and socializing on Facebook. Furthermore, in October of 2012, the claimant told Dr. Zaremba that he had could attend to his activities of daily living (20F). Despite his allegations, the record lacked any evidence that he was so significantly limited, which suggested that his limitations were not as severe as he reported. All of these factors discount his allegations of limitation and support the limitations identified in the residual functional capacity statement.

(Doc. 8-3, p. 25). The ALJ did not err in conducting this analysis as part of his RFC assessment. The administrative record contains substantial evidence that supports the ALJ's RFC assessment. *Wilkinson v. Comm'r of Soc. Sec.*, 289 Fed. Appx. 384, 386 (11th Cir. 2008) (per curiam) ("The ALJ did not give undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion.").

## V.   CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 30, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE